IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA SPIGARELLI, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-1938 |
| | : | |
| v. | : | |
| | : | |
| TARGET CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**Jones, II, J.**                                                                                       **October 25, 2012**

Plaintiff Christina Spigarelli brings this action against Defendant Target Corporation. She contends Defendant violated her rights under the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA").[1]  Before the Court is Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(c) (Dkt. No. 18).  For the reasons set forth below, the Motion will be denied.

**I.      BACKGROUND**

Plaintiff was hired and trained by Defendant as an executive team leader for asset protection ("ETL-AP") on August 15, 2005; in October 2006, she became an executive team leader for guest experience.  In February 2007, Defendant issued Plaintiff a final warning for negligent conduct relating to Plaintiff's attempt to apprehend a shoplifter in violation of various company asset protection policies.  Pursuant to said final warning, Plaintiff was subject to probation until February 2008, during which time she was subject to termination if she engaged

---

[1]The PDA is a subset of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

1

in further negligent conduct.

In August 2007, Plaintiff returned to the ETL-AP position. On December 7, 2007, Plaintiff informed Defendant that she was pregnant. Defendant claims that on December 10, 22 and 23, 2007, Plaintiff failed to follow asset protection protocol, including authorizing another employee's shoplifter apprehension in violation of Defendant's policies. On January 9, 2008, Plaintiff contends that her supervisor stated that (1) Plaintiff's "decision-making was being affected because of [Plaintiff's] pregnancy hormones;" (2) Plaintiff "was being too emotional and getting caught up into things;" and (3) Plaintiff "wasn't thinking right and [she] was using not sound judgment." (Pl. Dep. 45). Plaintiff's supervisor allegedly went on to explain that in her experience with pregnant family members and other pregnant women, such women "get emotional and their hormones get all affected in their way of judgment calls that they had made in the past." (*Id.* at 45-46). On January 17, 2008, Plaintiff was terminated.

## II.     STANDARD OF REVIEW

Under Fed. R .Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). Summary judgment is

mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. An issue is genuine if the fact-finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

### III.   DISCUSSION

Where, as here, a plaintiff seeks to prove a wrongful-termination claim under the PDA with indirect evidence, she must satisfy the burden-shifting standard articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that analysis, she must first establish a *prima facie* case of discrimination by showing: (1) her employer had actual knowledge of her pregnancy; (2) she was qualified for her position; (3) she was terminated; and (4) a causal nexus exists between her pregnancy and her termination. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 364-65 (3d Cir. 2008). Upon a *prima facie* showing, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the plaintiff's termination. *Id.* at 364. If the employer is able to do so, the burden shifts back to the plaintiff to show that the employer's articulated reason was a pretext for discrimination. *Id.*

There is no dispute that Plaintiff informed Defendant that she was pregnant or that she was terminated, or that she was qualified for her position at the time of her hiring. Defendant maintains, however, that Plaintiff (1) was ultimately unqualified for her position, because she

violated company policies relating to her asset protection efforts; and (2) has not demonstrated a connection between her pregnancy and her termination.  As to the first argument, despite Defendant's citation of this Court's own earlier opinion in support of Defendant's premise that Plaintiff was no longer qualified for her position,[2] it remains inappropriate to confuse an analysis of whether Plaintiff's alleged (and contested) violations of company policy constitute impermissible pretext for discrimination with whether Plaintiff has demonstrated *prima facie* that she was qualified for her position.  In other words, Defendant may not justify summary judgment in its favor by saying Plaintiff wasn't qualified as an ETL-AP because she violated ETL-AP policy, when it also says that she was terminated for said violations and Plaintiff disputes those same alleged violations.[3]

As to Defendant's second argument against Plaintiff's *prima facie* case, Plaintiff claims that she was accused of violating company policy on three different occasions within two weeks of informing Defendant of her pregnancy, after facing no such accusations in the previous 10 months.  She further contends that she was terminated a week after her supervisor expressed her

---

[2] Defendant cites *Nelson v. DeVry, Inc.*, Civ. No. 07-4436, 2009 WL 1213640 (E.D. Pa. Apr. 23, 2009) (Jones, J.), noting that this Court held the *Nelson* plaintiffs' failure to disclose their criminal backgrounds violated company policy and thus subjected them to termination at any time. *Id.* at *6.  However, in that instance, the plaintiffs did not dispute that they actually possessed criminal backgrounds, which they had concealed from their employer; plaintiffs merely contended that their backgrounds remained pretext for racially discriminatory termination.  Here Plaintiff disputes that she in fact violated Defendant's asset protection policies which allegedly led to her termination.

[3] *See Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) (overturning district court holding that alleged insubordination equated to disqualification for position; "[i]nsubordination...plainly is not something the plaintiff must *disprove* to succeed at the first level of proof, but rather it is more logically a defense that is raised at the second level to meet the plaintiff's *prima facie* case of discrimination.") (emphasis in the original).

belief that Plaintiff's pregnancy rendered Plaintiff unable to exercise appropriate judgment in her role as an ETL-AP.  Such temporal proximity between Defendant's knowledge of Plaintiff's pregnancy and subsequent adverse employment actions would be sufficient to draw an inference of causality as to defeat summary judgment.  *See Doe*, 527 F.3d at 359.[4]  Whether Plaintiff's supervisor indeed expressed such a belief–Defendant contends the supervisor made no such statements–or whether Plaintiff in fact violated company policy three times in December remain questions of fact appropriately put before the jury.  Defendant's articulated legitimate, non-discriminatory reasons for terminating Plaintiff raise additional questions of fact for the jury, such as which alleged policy violations, on which dates, led to Plaintiff's termination.

## V.     CONCLUSION

To quote a colleague facing a similar analysis:

> [t]o grant summary judgment for the Defendant in this case would be resolve important and disputed questions of fact in favor of the Defendant.  The facts are not clear and the information developed through discovery only highlights the sense that the Plaintiff and the Defendant have wide-ranging differences in interpreting the facts of this case.  That makes this case inappropriate for summary judgment.

*Raker v. Bar-BQ Pit, Inc.*, Civ. No. 10-2885, 2012 WL 1521861, at *2 (E.D. Pa. Apr. 30, 2012) (Stengel, J.).  Accordingly, Defendant's summary judgment motion will be denied.  An appropriate Order follows.

---

[4] In addition, it is unclear whether similarly-situated, non-pregnant individuals were treated more favorably than Plaintiff under the same circumstances.